UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CA #:03 CV 12463 RGS

GREAT NORTHERN INSURANCE CO.
as subrogee of PHYLLIS MACNEIL
1000 Pillsbury Center
Minneapolis, MN  55402
                Plaintiff

v.

INTERCITY ALARMS, INC.
20 North Main Street
Yarmouth, MA  02664
                Defendant

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT INTERCITY ALARMS, INC.'S MOTION TO AMEND ITS ANSWER TO ADD AFFIRMATIVE DEFENSES**

In accordance with the Federal Rules of Civil Procedure, Plaintiff Great Northern Insurance Co., as subrogee of Phyllis MacNeil, hereby submits this Response in Opposition to Defendant Intercity Alarms, Inc's Motion to Amend its Answer to Add Affirmative Defenses. For the reasons set forth below, Defendant's motion should be denied.

**I.    BACKGROUND**

Plaintiff Great Northern Insurance Co. provided property insurance for Phyllis MacNeil's residence located at 148 Gansett Road, Woods Hole, Massachusetts 02543. During the late evening hours of January 21, 2003 and the early morning hours of January 22, 2003, a catastrophic fire completely destroyed Ms. MacNeil's home. The home was equipped with an automatic alarm system that was designed, installed, monitored, maintained, inspected, and tested by Defendant Intercity Alarms, Inc. ("Intercity Alarms"). The subject alarm system totally failed to operate and as a result, Ms. MacNeil's residence was completely destroyed.

On January 21, 2003, Third Party Defendant John Vose, a caretaker and handyman hired by Ms. MacNeil, had been refinishing the kitchen cabinets and drawers of the home. During this

work, one of the kitchen drawers was left on top of an electric Thermador Cook Top and one of the controls of that Thermador Cook Top was inadvertently placed in the "on" position. Mr. Vose left the premises at approximately 5:00 p.m.

At 11:49 p.m. on January 21, 2003, Intercity Alarms received a low-temperature alarm from the subject property and notified John Vose, who lived nearby. Mr. Vose went to Ms. MacNeil's home two houses away and observed the kitchen, and particularly the cabinets, fully involved in fire. At 11:59 p.m., Mr. Vose notified the Falmouth Fire Rescue Department, who arrived at 12:07 a.m. on January 22, 2003. At that point, the fire was unable to be controlled, and subsequently the MacNeil home was completely destroyed.

Deputy Chief Glen A. Rogers of the Falmouth Fire Rescue Department, State Fire Marshal Francis M. McGinn, and Plaintiff's origin and cause expert Thomas J. Klem all concur that the fire originated in the kitchen of the MacNeil home, and specifically at the Thermador Cook Top. Further, the aforementioned investigators established that the cause of the fire was a result of one of the burners of the Thermador Cook Top slowly igniting the kitchen drawer that rested on top of the Cook Top. This ignition process occurred over a period of 6-7 hours. The small, smoldering fire was not detected by the 4 smoke detectors located in the home, which completely failed to operate. Intercity Alarms admitted this in a letter dated April 16, 2003 from Intercity Alarm President Ridgeway Crouch to Bruce MacNeil, son of Phyllis MacNeil. Rather, a low-temperature alarm notified Intercity Alarms' central monitoring station at 11:49 p.m.

In the expert report of Plaintiff's alarm expert, Richard N. Fedor, the low-temperature alarm signal is explained:

> A low temperature sensor is normally wired as an open circuit device, thereby requiring the closing of a contact on the sensor to activate an alarm condition. It has been recognized that fire attacking wiring to either a fire detector or a low temperature detector will cause a short circuit, thus activating the low

2

>   temperature warning from a high heat or fire attack of the wiring,
>   such as occurred in this case.

See Plaintiff's Expert Report of Richard N. Fedor, p. 5, attached hereto as Exhibit A. Therefore, Mr. Fedor opines that the fire burned the wires of the low temperature alarm, causing a short circuit, but resulted in an alarm's being sent to Intercity Alarms at 11:49 p.m.

Not only does Mr. Fedor's expert report explain the low temperature alarm signal that occurred just prior to midnight on January 21, 2003, but it also sets forth all of the failures on the part of Intercity Alarms with respect to the alarm system.[1]

## II.    PROCEDURAL HISTORY

Plaintiff commenced this subrogation action on December 8, 2003, and Defendant Intercity Alarms submitted its Answer on December 30, 2003. In asserting its affirmative defenses, Intercity Alarms failed to assert the defenses of statute of limitations, statute of repose, and release. Since that time, not only has all written discovery been concluded, but also all fact depositions. Plaintiff served its expert reports to Intercity Alarms via Federal Express on September 27, 2004. Intercity Alarms now moves for leave to amend its Answer.

## III.   ARGUMENT

Defendant Intercity Alarms' Motion for Leave to Amend the Answer should be denied as the affirmative defenses it wishes to raise at this stage of the litigation have been waived. Rule 8(c) of the Federal Rules of Civil Procedure governs affirmative defenses:

>   in pleading to a proceeding pleading, a party *shall* set forth
>   affirmatively accord and satisfaction, arbitration and award,
>   assumption of risk, contributory negligence, discharge in

---

[1] In his report, Mr. Fedor's opines, among other things, that Intercity Alarms violated various NFPA standards, BOCA Codes, and the Massachusetts State Building Codes; improperly programmed the alarm system as to the transmittal of signals to central monitoring; failed to properly test or verify receipt of any fire-related signals; failed to properly test the smoke detectors in the MacNeil residence; improperly added a new control/communicator panel to the alarm system without removing old and malfunctioning equipment; improperly wired the control and communication systems; and failed in its actions/inactions as to the improper programming and circuit supervision.

> bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, latches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." FRCP 8(c), (emphasis added).

Whether to grant leave to amend the pleadings is within the discretion of the trial court. Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449, 1995 U.S. App. LEXIS 34687 (1st Cir. 1995), quoting Manzoli v. Commissioner, 904 F.2d 101, 107 (1st Cir. 1990). Failure to plead an affirmative defense generally results in a waiver of the defense and its exclusion from the case. Id. at 449; Conjugal Partnership v. Conjugal Partnership, 22 F.3d 391, 400 (1st Cir. 1994). The First Circuit noted in Wolf that an affirmative defense must be pleaded in the Answer in order to give the opposition party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense. Id. at 449, citing Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1226 (1st Cir. 1994).

Those courts that have refused to allow a defendant to amend its answer have done so generally in somewhat extreme cases, such as five days before trial or five years after the complaint has been first answered. See Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 1995 U.S. App. LEXIS 34687 (1st Cir. 1995); Perlmutter v. Shatzer, 102 F.R.D. 245, 1984 U.S. Dist. LEXIS 15808; Fed. FCC. L.Rep. (CCH) p.91, 585. However, a court will deny a defendant's motion for leave to amend its answer at the summary judgment stage. See Radford Trust v. First UNUM Life Ins. Co. of America, 321 F.Supp.2d 226, 2004 US Dist. LEXIS 10916 (D. Mass. 2004). In Radford, the court held that because the defendant failed to raise its defense in its Answer, they could not raise it at the summary judgment stage. Here, Intercity Alarms is attempting to raise additional affirmative defenses for purposes of filing a motion for summary

4

judgment. As such, Intercity Alarms has waived any affirmative defenses not set forth in its Answer.

Furthermore, there are only three instances where a defendant will be permitted to amend its answer. See F.R.C.P. 15(a). Rule 15 permits an amendment under the following conditions: (1) within 20 days after the Answer is served; (2) by written consent of the adverse party; or (3) by leave of Court. Id. It is evident that the first two exceptions do not apply here, as the 20 day window has lapsed, and Plaintiff opposes Intercity Alarms' motion. The issue for this Court to decide is whether or not "justice so requires" that the amendment be allowed.

In exercising its discretion in deciding whether "justice so requires" to grant or deny a motion for leave to amend the Answer, a court will look at several factors, none of which is dispositive. Those factors include a bad faith and dilatory motive, repeated failure to cure, futility, undue delay, or undue prejudice. Perlmutter v. Shatzer, 102 F.R.D. at 247. Furthermore, the burden is on the moving party to show that the non-moving party will not be unduly prejudiced. Id., at 248.

While Plaintiff acknowledges that Intercity Alarms' motion was not motivated by bad faith, Plaintiff submits that allowing Intercity Alarms to amend its Answer at this stage in the litigation would cause the Plaintiff undue prejudice and undue delay. Furthermore, Intercity Alarms had full knowledge of all of Plaintiff's allegations when the original Answer was filed, and still failed to cure any deficiencies in its Answer. The submission of the Expert Report of Mr. Fedor in no way changed or altered the allegations against Intercity Alarms. As such, Intercity Alarms' motion should be denied.

As early as August 5, 2003, Intercity Alarms was aware that Plaintiff's had in its possession an unsigned Proposal of Intercity Alarms dated July 11, 1983 for the initial installation of an alarm system at the subject premises. See Letter to Intercity Alarms dated

5

August 5, 2003, attached hereto as Exhibit B. Further, in a letter to counsel for Intercity Alarms, Plaintiff's counsel outlined Plaintiff's theory of liability. See Letter to Counsel for Intercity Alarms dated September 25, 2003, attached hereto as Exhibit C. Moreover, the Complaint specifically alleges that Intercity Alarms, among other averments, was responsible for Plaintiff's damages as a result of the negligent design and installation of the subject alarm system. See Complaint ¶7. In addition, the complaint also alleges in ¶15 that the damages that are subject of this litigation were proximately caused by Intercity Alarms':

    a.    Failing to properly **design** the alarm system;

    b.    Failing to properly **install**, maintain, inspect, **test**, and/or monitor the aforesaid alarm system at the premises;

    c.    **Designing** and **installing** the alarm system so that its smoke detectors failed to send an alarm signal to the central monitoring location;

    d.    Failing to comply with all applicable codes, statutes, and ordinances concerning the **installation**, servicing, maintenance, **testing**, and/or monitoring of the alarm system;

    e.    Failing to comply with applicable NFPA standards concerning the programming, **installation**, maintenance, servicing, and/or monitoring of alarm systems;

    g.    Failing to exercise reasonable care and diligence in **designing**, **installing**, servicing, testing, maintaining, and/or monitoring of the alarm system;

    h.    Failing to properly train and/or supervise its employees in the proper **design**, application, programming, **installation**, service, **testing**, maintenance, and monitoring of this alarm system....

See Complaint ¶15 (emphasis added).[2]

As such, it is a mischaracterization that Intercity Alarms was first provided information about Plaintiff's claim of negligent installation and testing on September 29, 2004 upon receipt

---

[2] Plaintiff also incorporated by reference these averments in its allegations for breach of contract and breach of express and/or implied warranties.

of Mr. Fedor's report. Intercity Alarms had notice of all Plaintiff's allegations since the outset of this litigation, as well as the availability of the affirmative defenses it now seeks to assert at this late stage. In Perlmutter, the court based its decision, in part, on the basis that "[n]o new facts and no changes in the law had arisen to give defendant sudden notice of the availability of the defense." Perlmutter v. Shatzer, 102 F.R.D. at 248. The Permutter court also relied on the reasoning from Strauss v. Douglas Aircraft, 404 F.2d 1152 (2d Cir. 1968), wherein that Court stated "…[i]n sum, *the party wishing to raise the defense is obliged to plead the statute of limitations at the earliest possible moment….*" Id. at 249, quoting Strauss, 404 F.2d 1152, 1155. (Emphasis of Perlmutter court).

Here, Intercity Alarms has failed to raise such affirmative defenses at the earliest possible moment, and those defenses have accordingly been waived. Therefore, Defendant Intercity Alarms' Motion for Leave to Amend the Answer should be denied.

## IV.   **CONCLUSION**

For the forgoing reasons, Defendant Intercity Alarms' Motion for Leave to Amend the Answer should be denied.

                    GIARUSSO, NORTON, COOLEY & McGLONE, P.C.

BY:    s/ Christine K. Tramontana
         Roy P. Giarusso, Esquire (BBO #549470)
         Christine K. Tramontana (BBO #644849)
         Giarusso, Norton, Cooley, & McGlone, P.C.
         Marina Bay
         308 Victory Road
         Quincy, MA   02171
         Telephone:  (617) 770-2900

OF COUNSEL:
A. Richard Bailey, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2040

## CERTIFICATE OF SERVICE

I, CHRISTINE KELLEY TRAMONTANA, attorney for plaintiff herein, certify that a true and correct copy of the foregoing Motion In Opposition To Defendant Intercity Alarms, Inc.'s Motion To Amend The Answer To Add Affirmative Defenses and Incorporated Memorandum of Law served electronically, to the following on the 14th day of October, 2004:

Bradford N. Louison, Esquire
Merrick Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
COUNSEL FOR DEFENDANT, INTERCITY ALARM


BY:  s/ Christine Kelley Tramontana
     Christine Kelley Tramontana, Esquire

PHILA1\2151223\1 133717.000