UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA #: 03 CV 12463 RGS

GREAT NORTHERN INSURANCE CO.
as subrogee of PHYLLIS MACNEIL,
    Plaintiff

v.

INTERCITY ALARMS, INC.
    Defendant/Third Party Plaintiff,

v.

JOHN VOSE,
    Third Party Defendant

## DEFENDANT INTERCITY ALARMS, INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY JUDGMENT.

1. Intercity installed and designed the alleged system on or about June 30, 1983.

2. This civil action was filed in the court on December 8, 2003.

3. The plaintiff subrogee, Phyllis MacNeil (hereinafter "MacNeil") owned a home with her husband (now deceased) in Woods Hole, Massachusetts.

4. The house was totally destroyed by fire on January 21, 2003. (See Plaintiff's Complaint, paragraph 1 - 13).

5. At the time of the fire, MacNeil had an agreement with Intercity for the monitoring of the burglar, smoke and low heat alarm system at the house. (Complaint paragraphs 1-13).

6. At the time of the fire, Intercity was monitoring the alarms at the MacNeil's house but on the night of the fire, no smoke alarm alert was registered at Intercity. (Complaint paragraph 7.)

7.  A low heat alert, however was detected by Intercity. Intercity notified the MacNeil's handyman John Vose, who was on the list for notification. He discovered the fire and called the fire department.(Exhibit #4)

8.  The plaintiff alleges damages from the loss of the home in excess of $2 million. (Complaint, paragraph 13).

9.  The plaintiff alleges that as a result of the defective design, installation, maintenance and/or testing of the alarm systems, the alarm system's inability to detect the fire in its incipient stage and to alert the fire department, caused an escalation in the damage to the plaintiff's insured as early detection and response would have extinguished the fire in its early stages. (Complaint, paragraph 12).

10. The plaintiff alleges negligence in Count I. It claims that the plaintiff suffered the loss as a result of Intercity failing to properly *design* the alarm system, failing to properly *install*... the alarm system, *designing and installing* the alarm system so that its smoke detectors failed to send an alarm signal to the central monitoring system... failure to comply with all applicable codes, statutes and ordinance concerning the *installation* ... of the alarm system, failure to comply with applicable NFPA standards concerning the *programing installation*... of the alarm system, failure to exercise reasonable care in *designing and installing*... the alarm system, failure to properly train and/or supervise its employees in the proper *design,* application, programing *installation*... of the alarm system. (Complaint, paragraph 15 a-l).

11. The plaintiff alleges breach of contract in Count II. It alleges that "prior to January 21, 2001, Phyllis MacNeil had contracted with the defendant to provide an alarm system to detect fires at the incipient stage and alert the fire department in case of a fire on the premises, and by express and/or implied agreements, defendant warranted and/or guaranteed that its alarm system would provide notification of a incipient fire condition." (Complaint, paragraphs 17 and 18).

12. The plaintiff alleges breach of warranty in Count III alleging that "in entering into an agreement with the plaintiff's insured to ***design, install*** and/or monitor the alarm system the defendant expressly and/or impliedly warranted that it would perform its duties in a professional and workmanlike manner... and by failing to perform its duties... the defendant breached its expressed and implied warranties. As a direct and proximate result of the aforesaid breaches of warranties, the fire at the premisses occurred." (Complaint, paragraphs 22-24). (boldface and italics added).

13. On June 30, 1983, Intercity proposed in writing to Norman MacNeil, the subrogee's husband, to provide "burglar alarm addition," "new fire alarm system," and "new heat loss alarm." (Exhibit #1) The work was done on July 11, 1983 (Exhibit #2).

14. There is no disagreement that the original work was done on that date by Intercity. There is also no disagreement that from the date of the original work order as set forth in Exhibit #1 Intercity monitored the alarm systems up to and including the date of the fire January 21, 2003.

15. Other than the exhibits attached hereto, there is no evidence of any contract between MacNeil and the defendant Intercity.

16. This civil action was filed in the U.S. District Court in Boston, and the date on the civil action cover sheet is December 5, 2003. The date of the Complaint is the same.

The Defendant,
INTERCITY ALARMS, INC.
by its attorney,

_____
Bradford N. Louison (BBO# 305755)
MERRICK, LOUISON & COSTELLO, LLP
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

## CERTIFICATE OF SERVICE

I, Bradford N. Louison, hereby certify that on the ___ day of ___, 2004, I served the foregoing by causing a copy to be mailed, postage prepaid, directed to Roy P. Giarrusso, Giarrusso, Norton, Cooley & McGlone, P.C., Marina Bay, 308 Victory Rd., Quincy, MA 02171; A. Richard Bailey, Cozen O'Connor, Attorneys, 1900 Market St., Philadelphia, PA 19103-3508.

_____
Bradford N. Louison

# ICA INTERCITY ALARMS INC.

**Proposal**

Page No. 1 of 1 Pages

COMMERCIAL and RESIDENTIAL
BURGLAR and FIRE DETECTION
22 Whites Path • South Yarmouth 02664
617-394-8900 • 617-394-1331

## PROPOSAL SUBMITTED TO:

| | |
|---|---|
| PHONE: 548-0968 | DATE: 6/30/83 |
| NAME: MR NORMAN MacNEIL | JOB NAME: MacNEIL |
| STREET: 168 GANSETT RD - P.O. Box 92 | STREET: SAME |
| CITY: WOODS HOLE | CITY: | STATE: |
| STATE: MASS 02543 | DESIGN ENGINEER: N. HART | DATE OF PLANS: 6/23/83 |

We hereby submit specifications and estimates for:

BURGLAR ALARM ADDITION
- FBI 1272 CONTROL PANEL WITH STANDBY POWER SUPPLY
- 2 CORBY KEYPADS (1 #7020 - 1 #7030) (ONE WITH ENTRY - EXIT AUDIBLE)
- 2 230 MOTION DETECTORS

NEW FIRE ALARM SYSTEM
- 4 LOW VOLTAGE SMOKE DETECTORS
- 4 HEAT BUTTONS
- 2 8" INSIDE BELLS

NEW HEAT LOSS ALARM
- 4 HEAT MONITORS (2 FIRST FLOOR - 2 SECOND FLOOR)

All parts and labor are guaranteed for one year. ICA reserves the option to repair or replace a defective system. ICA is not an insurer and does not undertake to guarantee against any loss or damage to the purchaser by reason of any burglary, theft, fire, personal injury or any other cause, nor shall ICA in any wise be liable in any such event by reason of any negligence or oversight on the part of any of its employees.

We hereby propose to furnish labor and materials - complete in accordance with the above specifications, for the sum of:

ONE THOUSAND NINE HUNDRED TEN dollars ($1910.00) with payment to be made as follows:
PLUS 5% MASS SALES TAX ON PARTS ONLY AMOUNTING TO $60.60
$700.00 DOWN PAYMENT - BALANCE DUE UPON COMPLETION OF INSTALLATION (DOWN PAYMENT RECEIVED 6/30)

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workman's Compensation Insurance.

Authorized Signature _Nelson G. Hart_

NOTE: This proposal may be withdrawn by us if not accepted within 30 days.

## Acceptance of Proposal

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Signature _____

Date _____ Signature _____

EXHIBIT 1

**EXHIBIT 2**

April 16, 2003

Bruce M. MacNeil
Ark-Les Corporation
95 Mill Street
PO Box 686
Stoughton, MA 02072

Dear Mr. MacNeil,

I am happy to provide the information you requested regarding the fire at your mother's home in January. Let me give a complete chronology of our records:

7/11/83   Installed system with FBI 1272 alarm panel, burglar and fire protection.

11/7/95   Replaced Seaboard radio with AES backup wireless radio.

9/21/98   System not resetting. Repaired and tested all signals.

8/17/00   System trouble. Replaced batteries and tested all signals.

11/17/00  Replaced side door contact.

6/28/01   Replaced back door contact.

1/21/03   Received temperature heat monitor alarm. Responded per instructions.

As you can see from the history report, the system tested in to our Central Station every day, so the alarm panel was able to communicate signals. We did not receive a signal from the smoke detectors, but did receive a signal from the low-temperature detectors. It is safe to assume that the smoke detectors at the location failed to operate.

Please contact me if I can be of further assistance.

Sincerely,


Ridgway Crouch
President
Intercity Alarms

EXHIBIT 3

# ORIGINAL

VOLUME 1
PAGES 1-73
EXHIBITS 1-6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 03CV12463 RGS

GREAT NORTHERN INSURANCE CO.           )
as subrogee of PHYLLIS MACNEIL,        )
1000 Pillsbury Center                  )
Minneapolis, MN 55402,                 )
    Plaintiff,                         )
                                       )
    vs.                                )
                                       )
INTERCITY ALARMS, INC.,                )
20 North Main Street                   )
Yarmouth, MA 02664,                    )
    Defendant/Third-Party Plaintiff,   )
                                       )
    vs.                                )
                                       )
JOHN VOSE,                             )
    Third-Party Defendant.             )

      **DEPOSITION OF PHYLLIS MACNEIL**, a witness called on behalf of the Defendant/Third-Party Plaintiff, pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Jessica L. Bisaillon, a Registered Professional Reporter, Certified Shorthand Reporter, and Notary Public in and for the Commonwealth of Massachusetts, at Merrick, Louison & Costello, LLP, 67 Batterymarch Street, Boston, Massachusetts 02110, on Thursday, June 10, 2004, commencing at 11 a.m.

DUNN & GOUDREAU COURT REPORTING SERVICE, INC.
One State Street, Suite 1150
Boston, Massachusetts 02109
(617) 742-6900

10

| | | |
|---|---|---|
| 1 | | an assistant buyer. |
| 2 | Q. | How about your husband?  What did he do |
| 3 | | for a living? |
| 4 | A. | He ran a company called ARK-LES |
| 5 | | Corporation. |
| 6 | Q. | How do you spell that? |
| 7 | A. | A-R-K -- capital A-R-K, dash, capital |
| 8 | | L-E-S, Corporation. |
| 9 | Q. | Is that business still in business? |
| 10 | A. | Yes. |
| 11 | Q. | And what did that company do? |
| 12 | A. | They make switches for appliances and |
| 13 | | automobiles and all kinds of things. |
| 14 | Q. | Where are they located? |
| 15 | A. | Many places.  But their main office is |
| 16 | | down in Stoughton, Massachusetts. |
| 17 | Q. | What was the name of the address of the |
| 18 | | house in Woods Hole that burned? |
| 19 | A. | It was 148 Gansett Road. |
| 20 | Q. | And when did you and/or your husband |
| 21 | | purchase that house? |
| 22 | A. | I think it was just about 24 years ago |
| 23 | | from now. |
| 24 | Q. | And do you recall who you bought it from? |

16

| | | |
|---|---|---|
| 1 | Q. | My records seem to indicate that it was on |
| 2 | | or around 1983. |
| 3 | A. | That could be. |
| 4 | Q. | Does that sound like it's possible? |
| 5 | A. | It could be. Uh-huh. |
| 6 | Q. | And that was maybe a few years after you |
| 7 | | purchased the house? |
| 8 | A. | (Witness indicating.) |
| 9 | Q. | Yes?  I just would like you to just say |
| 10 | | yes so that she can take it down. |
| 11 | A. | It was after we purchased the house.  Yes. |
| 12 | Q. | Okay.  Did you ever hire, if you know, any |
| 13 | | other type of monitoring company other |
| 14 | | than Intercity Alarms at any time? |
| 15 | A. | No, we didn't. |
| 16 | Q. | Do you recall them coming to your house |
| 17 | | after your husband hired them? |
| 18 | A. | Yes.  Many times. |
| 19 | Q. | And what did they do? |
| 20 | A. | They would check and -- the batteries and |
| 21 | | things like that, I guess.  They would |
| 22 | | call and say that it was time to check the |
| 23 | | alarms, and then we would -- I would let |
| 24 | | them in. |

# Fire Investigation Summary Report


EXHIBIT 4

Case Number: **2003-117-0071**
Controlling Case Number: **None**
Case Type: **F30 Fire - Accidental**

Report Creator: **Francis M McGinn**
Lead Investigator(s): **Francis M McGinn**   Team: **South**

FIU Requested By: **Chief Paul Brodour from Falmouth Fire Department**
FIU Requested On:

Date and Time of Incident: **01/22/2003 at approximately 12:10 AM**
Address/ Location of Incident: **148 Gansett Rd   Falmouth, MA**

Type of Investigation: **Fire**
Type of Property: **Residential**

### Protection Systems:
Smoke Detector: **Operational**
Heat Detector: **Operational**
Other: **Not Operational**
Comments: **Property is a 1.5 story wood framed expanded ranch style home with an attached garage. The property has approximately 4618 sq ft of living space. Property has a slate gable style roof, is heated by oil by way of forced hot water and has a brick veneer outside walls.
The property had a burglary/ fire alarm system with Intercity Alarm Co.**

## Fire Source

Cause of Fire: **Accidental**
Ignition: **Electric stove accidentally turned on**
Material Ignited: **kitchen cabinet drawer placed on top of stove**
Explanation:

NOTIFICATION AND RESPONSE
1.   On Wednesday January 22, 2003 at approximately 01:00 AM, I was notified by State Police Communications of a structure fire at 148 Gansett Rd in the Woods Hole section of Falmouth. As a result of that notification, I responded and met with Fire Chief Paul Brodour, Deputy Chief Rogers and Sergeant Ed Dunn of the Falmouth Police Department. Upon my arrival, fire personnel were still fighting the fire. Their efforts were hampered by high winds and extremely cold temperatures.

WITNESS INTERVIEWS
2.   SGT Ed Dunn and I spoke with John Vose, who reported the fire throughout our investigation. Mr. Vose told us that he was called at home by Intercity Alarm sometime before midnight. John told us that the alarm company representative told him that they were receiving a cold sensor alarm. John told us that he walked over to the property to investigate and saw all the kitchen cabinets on fire through the front kitchen window. John said that he unlocked and opened the front door a few inches and saw heavy smoke in the house. John said that he closed the door and went to call the fire department. John said that he is the caretaker of the property and had also been doing some work in the kitchen area of the home. He said that he was working with his son's Luke and Tom and another person, Rob Martinez. John said that they were sanding and applying a water based urethane. They vacuumed up the sawdust with an Electrolux vacuum and then emptied the sawdust into a 32 gal light tan plastic trash barrel. John also told us that he had taken the face plate off of the cook top and pulled and then replaced the fuse at the panel. He said he put the fuse back because the lights went out. John told us that nobody was smoking while they worked.

Page 1

# Fire Investigation Summary Report

There were no coffee pots or electric heaters working. There were no rags left behind and he re-iterated it was a water based urethane. This was confirmed by looking at the urethane being used, Zar clear polyurethane. John said that he left at 5:00 PM, locked the door and set the alarm.

3. Later into our scene examination John told us that he put one of the kitchen drawers on top of the Thermadore cook top. He said that the cook top was old and one of the things he was going to do was replace the cook top with a new one. John then provided us with a diagram of the kitchen area.

SCENE EXAMINATION

4. Deputy Chief Rogers, Sgt Dunn and I then began an investigation into the origin and cause of the fire. We examined the scene looking at the areas of least damage and working towards areas of heavier damage. We used the scientific methodology in our investigation.

5. An exterior examination of the building revealed the following damage: Nearly the entire building collapsed into its interior or was knocked in during suppression and overhaul. Side A had heavy fire damage extending from the kitchen Bay type window, the front door and another bay window towards the A/D corner. The entire roof had burned away and/ or collapsed into the building. Most of the brick A side veneer wall remained but a portion in the right center above a bay window collapsed. The two garage doors and wall supporting them remained intact although the roof collapsed and the peak was burned. The side B wall remained standing but the roof was burned away and the fire department knocked the wall over to avoid any injuries from collapse. The only part of Side C standing was an I beam and two lally columns supporting it. The brick veneer wall had collapsed or been knocked over. Part of the side D wall remained towards the D/A side. This investigation and the fire department used excavating equipment to remove some of the heavy debris during our investigation.

6. An interior examination of the building revealed the basement to be relatively free of fire damage indicating that the fire originated above the basement level. The interior C side basement wooden walls could be seen and were free of smoke, heat or fire damage. There was debris in the basement from collapse and any fire damage in the basement can be attributed to drop fire caused by collapsed burning embers. There was extensive fire damage to the interior main floor of the home. This damage was heavier in the kitchen area of the home which was located in the center of the expanded ranch style home. Rooms located off to the B and D sides had less fire damage.

7. A closer examination of the kitchen area revealed the lowest and heaviest damage to be in the area where the cook top was located. We recovered the cook top from this low burn area and examined it. The cooktop had charred wood on top of the griddle and knob area that contained remnants of kitchen type towels. We believe this wood was the remains of the drawer placed on top of the cook top in the center where the griddle burner was located. Patterns showed that it was placed over the griddle burner and knob. The knobs were located on the top of the appliance. This was photographed and collected as evidence by Deputy Chief Rogers. We determined that the cook top was our point of origin.

CONCLUSION

8. Based on our scene investigation and witness interviews we formed the collective opinion that the origin of this fire was the Thermadore Cook Top located in the kitchen and the cause was accidental. We believe that John Vose inadvertently depressed and turned the knob on when he placed a kitchen drawer on the cook top. The cook top then ignited the wooden drawer and subsequently other cabinets and nearby combustibles. This officer request this case be closed completed.

## Evidence

Gathered By: **Fire Department**

Description / Explanation / Comments:
**Electric cook top taken by the Dep Chief Rogers of the Falmouth Fire Department**

## Fire Investigation Summary Report

### Photos

Taken By:  Fire Marshal's Office

Description / Explanation / Comments:
Photos taken by Trooper Joe Condon of Crime Scene Services

### K-9

K-9 Not Used

### Occupants

No Known Occupants

### Injuries

No Known Injuries

### Owner

MacNeil, Phyllis  -- 10 Longwood Dr.  Apt 435   Westwood, MA   00000

### Reported By

Vose, John  -- 188 Gansett Rd   Falmouth, MA   00000

### Discovered By

Vose, John  -- 188 Gansett Rd   Falmouth, MA   00000

# Fire Investigation Summary Report

## Witnesses

Vose, John -- 188 Gansett Rd   Falmouth, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Vose, Tom -- 188 Gansett Rd   Falmouth, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Vose, Luke -- 188 Gansett Rd   Falmouth, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Martinez, Robert -- Pilgrim Ln   Buzzards Bay, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Dunn, Edward (SGT) -- Falmouth Police Dept   Falmouth, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Rogers, Dep Chief -- Falmouth Fire Dept   Falmouth, MA   00000
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

