UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CA #:03 CV 12463 RGS

GREAT NORTHERN INSURANCE CO.
as subrogee of PHYLLIS MACNEIL
1000 Pillsbury Center
Minneapolis, MN  55402
        Plaintiff

v.

INTERCITY ALARMS, INC.
20 North Main Street
Yarmouth, MA  02664
        Defendant

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT INTERCITY ALARMS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

In accordance with the Federal Rules of Civil Procedure, Plaintiff Great Northern Insurance Co., as subrogee of Phyllis MacNeil, hereby submits this Response in Opposition to Defendant Intercity Alarms, Inc.'s Motion for Partial Summary Judgment.  For the reasons set forth below, Defendant's motion should be denied.

**1.**    **Background**

Plaintiff Great Northern Insurance Co. provided property insurance for Phyllis MacNeil's residence located at 148 Gansett Road, Woods Hole, Massachusetts 02543.  During the late evening hours of January 21, 2003 and the early morning hours of January 22, 2003, a catastrophic fire completely destroyed Ms. MacNeil's home.  The home was equipped with an automatic alarm system that was designed, installed, monitored, maintained, inspected, and tested by Defendant Intercity Alarms, Inc. ("Intercity Alarms").  The subject alarm system totally failed to operate and as a result, Ms. MacNeil's residence was completely destroyed, causing damages in excess of $2,000,000. [See Expert Report of Richard N. Fedor, attached hereto as Exhibit A; Complaint, ¶ 13].

On January 21, 2003, Third Party Defendant John Vose, a caretaker and handyman hired by Ms. MacNeil, had been refinishing the kitchen cabinets and drawers of the home. [See Falmouth Fire Rescue Department Report, attached hereto as Exhibit B]. During this work, one of the kitchen drawers was placed on top of an electric Thermador Cook Top and one of the controls of that Thermador Cook Top was inadvertently placed in the "on" position. [See Expert Report of Thomas J. Klem dated September 19, 2004, p. 6, attached hereto as Exhibit C]. Mr. Vose left the premises at approximately 5:00 p.m. [Exhibit B].

At 11:49 p.m. on January 21, 2003, Intercity Alarms received a low-temperature alarm from the subject property. Id. In accordance with the "To Call List, Intercity notified John Vose, who lived nearby. Mr. Vose went to Ms. MacNeil's home two houses away and observed the kitchen, and particularly the cabinets, fully involved in fire. At 11:59 p.m., Mr. Vose notified the Falmouth Fire Rescue Department, who arrived at 12:07 a.m. on January 22, 2003. Id. At that point, the fire was unable to be controlled, and subsequently the MacNeil home burned to the ground.

The MacNeil home was equipped with an alarm system that was designed, installed, monitored, upgraded, and tested by Defendant Intercity Alarm, Inc. The initial installation of the system was done on July 11, 1983. [See Letter dated April 16, 2003 from Intercity Alarm President Ridgeway Crouch to Bruce MacNeil, son of Phyllis MacNeil, attached hereto as Exhibit D]. Defendant Intercity Alarm, Inc. performed subsequent work on the alarm system up until 2001. Id. Intercity also provided monitoring services from the initial installation in 1983 up to the date of the subject fire.

Deputy Chief Glen A. Rogers of the Falmouth Fire Rescue Department, State Fire Marshal Francis M. McGinn, and Plaintiff's origin and cause expert Thomas J. Klem all concur that the fire originated in the kitchen of the MacNeil home, and specifically at the Thermador

Cook Top. [See Exhibits B and C]. Further, the aforementioned investigators established that the cause of the fire was a result of one of the burners of the Thermador Cook Top that was accidentally turned on earlier that day which slowly ignited the kitchen drawer that rested on top of the Cook Top. Id. This ignition process occurred over a period of 6-7 hours. The small, smoldering fire was not detected by the smoke alarm system located in the home. Intercity admits that it never received a smoke alarm signal. [Exhibit D]. Rather, a low-temperature alarm notified Intercity Alarms' central monitoring station at 11:49 p.m. Id.

In the expert report of Plaintiff's alarm expert, Richard N. Fedor, the low-temperature alarm signal is explained:

> A low temperature sensor is normally wired as an open circuit device, thereby requiring the closing of a contact on the sensor to activate an alarm condition. It has been recognized that fire attacking wiring to either a fire detector or a low temperature detector will cause a short circuit, thus activating the low temperature warning from a high heat or fire attack of the wiring, such as occurred in this case.

[Exhibit A]. Therefore, Mr. Fedor opines that the fire burned the wires of the low temperature alarm, causing a short circuit, which resulted in an alarm signal being sent to Intercity Alarms at 11:49 p.m.

Not only does Mr. Fedor's expert report explain the low temperature alarm signal that occurred just prior to midnight on January 21, 2003, but it also sets forth all of the failures on the part of Intercity Alarms with respect to the alarm system. Specifically, in his report, Mr. Fedor's opines, among other things, that Intercity Alarms: 1) violated various NFPA standards, BOCA Codes, and the Massachusetts State Building Codes; 2) improperly programmed the alarm system as to the transmittal of signals to central monitoring; 3) failed to properly test or verify receipt of any fire-related signals; 4) failed to properly test the smoke detectors in the MacNeil

residence; 5) improperly added a new control/communicator panel to the alarm system without removing old and malfunctioning equipment; 6) improperly wired the control and communication systems; and 7) failed in its actions/inactions as to the improper programming and circuit supervision. Id.

**2.    Procedural History**

Plaintiff commenced this subrogation action on December 8, 2003, and Defendant Intercity Alarms submitted its Answer on December 30, 2003 and its Amended Answer on October 29, 2004.  At the Initial Scheduling Conference conducted on February 26, 2004, counsel submitted a Joint Pre-Trial Schedule, which provided in part that all dispositive motions were to be filed on or before November 30, 2004.  On December 20, 2004, Defendant Intercity Alarm, Inc. filed its Motion for Partial Summary Judgment.

**3.    Argument**

**A.    Defendant Intercity Alarms, Inc.'s Motion of Partial Summary Judgment should be denied because said motion was filed beyond the deadline set forth in the Court's Scheduling Order.**

Defendant Intercity Alarms, Inc.'s Motion of Partial Summary Judgment should be denied because said motion was filed out of time.  On February 26, 2004, this Court conducted an Initial Scheduling Conference, wherein the parties submitted an agreed Joint Statement with a proposed Pre-Trial Schedule.  The Pre-Trial Schedule provided that dispositive motions were to be filed on or before November 30, 2004.  The November 30, 2004 deadline by which to file Dispositive Motions was confirmed by counsel for Plaintiff in a letter dated September 27, 2004 to Attorney Louison, counsel for Defendant, Intercity Alarms, Inc.[1]  On or about December 20, 2004, Intercity Alarms, Inc. filed a Motion for Partial Summary Judgment.  Therefore, the Court

---

[1] See Exhibit A of Plaintiff's Motion for an Extension of Time to File a Motion in Opposition to Defendant Intercity Alarms, Inc.'s Motion for Partial Summary Judgment.

4

should not consider Defendant Intercity Alarms, Inc.'s motion, and said motion should be denied.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56 authorizes the grant of summary judgment only when the moving party demonstrates that, based on the pleadings, depositions, answers to interrogatories and affidavits, no genuine dispute as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co., 321 F. Supp. 2d 260 (D. Mass. 2004). In determining whether summary judgment is appropriate, the court must view the entire record in the light most favorable to the non-moving party. Id. Summary judgment is permitted only in the clearest of cases. Id. When determining whether disputed facts are genuine, the court must review the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Gunther v. Gap, Inc., 1 F. Supp. 2d 73 (D. Mass. 1998).

### C. The Statute of Limitations does not operate to bar Plaintiff's claims against Defendant Intercity Alarms, Inc.

In its Motion for Partial Summary Judgment, Defendant Intercity Alarms, Inc. argues that the applicable statute of limitations, M.G.L. c.260, §2A (2004), bars Plaintiff's claims for negligent design and installation of the alarm system. The Massachusetts statute of limitations provides that claims against a tortfeasor "shall be commenced only within three years next after the cause of action accrues." M.G.L. c.260, §2A (2004). Defendant Intercity Alarm, Inc. argues that Plaintiff's claims based upon negligent installation or negligent design are time-barred because the initial installation occurred in 1983.

Defendant Intercity Alarms, Inc. argument is fundamentally flawed in that actions in tort accrue at the time the plaintiff is injured. Joseph A. Fortin Constr., Inc. v. Massachusetts Housing Finance Agency, 392 Mass. 440 (1984). As such, Plaintiff's cause of action accrued on

5

January 21, 2003, the date of the subject fire. Plaintiff commenced this action on December 8, 2003, well within the three year statute of limitation. As such, Defendant Intercity Alarms, Inc.'s motion should be denied.

Furthermore, the Commonwealth of Massachusetts has adopted the discovery rule with respect to the statute of limitations. See Bowen v. Eli Lilly & Co., 408 Mass. 204, 557 N.E.2d 739 (1990); Sharton v. J.H. Westerbeke Corp., 11 Mass. App. 925, 415 N.E.2d 880 (1981) (Cause of action accrued when engine was damaged). The discovery rule applies to causes of action where the wrong is "inherently unknowable." Thus, the courts have developed a so-called "discovery rule" that tolls the statute of limitations until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct. Id. Under the discovery rule analysis, the result is the same: Plaintiff's cause of action accrued at the time of the fire. Defendant Intercity Alarms, Inc. admitted that its smoke detection alarm system failed to operate in a letter dated April 16, 2003. [See Exhibit D]. It was only after the fire that Plaintiff was aware that the subject alarm system was flawed and because of Intercity's violation of codes and standards, the system failed to properly operate. [Exhibit A]. Plaintiff commenced this action within one year of the fire. Accordingly, Plaintiff's claims are not time-barred by the statute of limitations.

> **D.** **Statute of Repose does not apply because the subject alarm system is not an improvement to real property and Defendant Intercity Alarm, Inc. is not the type of actor protected by the statute.**

Defendant Intercity Alarm, Inc. also argues that the statute of repose, as adopted by the Massachusetts legislature, bars Plaintiff's claims with respect to the negligent design and/or installation of the alarm system. The statute of repose is set forth in M.G.L. c. 260, § 2B and provides:

> Actions of tort for damages arising out of any deficiency or neglect
> in the design, planning, construction or general administration of

6

> an improvement to real property … shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.

M.G.L. c. 260, § 2B.

Massachusetts courts conduct a two-part analysis in determining whether § 2B applies. See Rosario v. M.D. Knowlton Co., 54 Mass. App. Ct. 796, 767 N.E. 2d 1126 (2002). First, a determination is made as to whether the work performed is an improvement to real property. Second, the inquiry centers on whether the actor is one that is afforded protection of the statute of repose. Id. Both criteria must be met for § 2B to apply. Here, the subject alarm system is not an improvement to real property. Likewise, Defendant Intercity Alarm, Inc. is not an actor that is afforded the protections of § 2B. Accordingly, § 2B does not apply so that Defendant Intercity Alarm, Inc.'s Motion for Partial Summary Judgment should be denied.

### 1. The alarm system is not an improvement to real property.

Defendant Intercity Alarm, Inc. argues that the subject alarm system at the MacNeil residence was an improvement to real property. However, Defendant fails to cite any case law, either in Massachusetts or anywhere in the United States, that holds for the proposition that an alarm system is an improvement to real property. Instead, Defendant Intercity Alarm, Inc. relies on cases that are clearly distinguishable from the present case.

First, Defendant Intercity Alarm, Inc. cites to Parent v. Stone & Webster Engineering Corp., 408 Mass. 108; 556 N.E.2d 1009 (1990), in which the defendant, who provided engineering, architectural, and construction management services to utility companies, attempted to invoke the protections of § 2B for its failure to affix a warning label to the high voltage distribution panel that was installed in 1958. Id. at 110. The defendant also performed subsequent services at the electrical generating plant from 1982 to 1984. There, the plaintiff

7

electrician was severely burned while he was testing for voltage drops in the electrical distribution panel. Id. at 109.

The court in Parent defined an improvement to real property as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Id. at 111, quoting Webster's Third New Intl. Dictionary 1138 (1961).[2] In holding that the installation of the distribution panel in 1958 was an improvement to real property, the court reasoned that distribution panel was a permanent addition to the electrical generating plant, involved the expenditure of labor and money, and served to increase the productivity of the plant. Id.[3]

The Parent case is inapplicable to the present matter. The subject alarm system is typical for any home like the MacNeils. The design is generic and is specified by code or national guidelines like the NFPA. Further, the alarm system was not a permanent addition, as such a system can be removed from the residence. Furthermore, the alarm system, by itself, added no value to the MacNeil's home. The alarm system is useless without the corresponding monitoring service. That the alarm system failed to operate on the evening of the fire is also evidence that it added no value to the property. As such, the alarm system is not an improvement to real property within the meaning of the statute.

---

[2] The Supreme Judicial Court of Massachusetts stated in Dighton v. Federal Pacific Electric Co., 399 Mass. 687; 506 N.E.2d 509 (1987) that "[w]here the actor is clearly within the statute, as an architect or a construction engineer, the use of a broad definition of 'improvement' such as Webster's is apt to give full scope to the remedial purpose of § 2B when divining whether the allegedly tortuous act is also within the statute." Id. at 697, 506 N.E.2d at 516. Here, Intercity is not an architect or construction engineer. As such, a broad definition of improvement to real property is not warranted.

[3] Although the defendant was protected by the statute of repose for the 1958 installation, the court concluded that the statute of repose did not apply to the defendant's subsequent negligent acts during 1982-1984. See Argument 3A, *infra*.

Defendant Intercity Alarms, Inc. also cites to Conley v. Scott Products, 401 Mass. 645; 518 N.E.2d 849 (1988). and Agri-Mark v. Niro, Inc., 214 F.Supp.2d 33, 40 (D. Mass. 2002). Conley involved the installation of ureaformaldehyde foam insulation in a residence. The court noted that the claims arose "out of alleged deficiency or neglect in the construction of an improvement to real property." Conley, 401 Mass. at 647, 518 N.E.2d at 850. Further, in dicta, the court found no distinction between the installation of insulation and the installation of aluminum siding, which was earlier held to be within the statute. Id., citing Salinsky v. Perma-Home Corp., 15 Mass. App. Ct. 193, 198-199 (1983). These cases are inapplicable to the present facts as the installation of insulation or aluminum siding involve construction activities. Installation of alarm systems is not construction-type activity under the meaning of the statute. As such, Defendant Intercity Alarms, Inc.'s reliance upon these cases is misplaced.

In Agri-Mark, the court held that the addition of a 12.5 ton turbofan to a milk evaporation system was an improvement as contemplated by § 2B. This upgrade involved the installation of the turbofan, which was mounted on a specially poured concrete foundation. Id. at n3. Furthermore, the plant had to be expanded to accommodate the equipment. Id. It was permanent in nature. This case, too, is clearly distinguishable from the simple installation of an alarm system.

**2.   Defendant Intercity Alarm, Inc. is not a protected actor under § 2B.**

The applicability of the statute of repose does not rest solely upon a demonstration that a defendant's work involved an improvement to real property. In order to invoke the defense offered under § 2B, the defendant must likewise show that it is a protected actor under the statute.

The statute of repose applies to actors "who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors…" Fine v. Huygens,

9

DiMella, Shaffer & Associates, 57 Mass. App. Ct. 397, 401-402, 783 N.E.2d 842, 846 (2003), quoting Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 696, 506 N.E.2d 509 (1987). The statute of repose was enacted to "limit the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real property." Klein v. Catalano, 386 Mass. 701, 720, 437 N.E.2d 514, 526 (1982).

As a threshold matter, Defendant Intercity Alarm, Inc. does not fall within the class that § 2B aims to protect. Defendant Intercity Alarms, Inc. is not an architect, engineer, contractor, nor other design professional. [Elliot dep. at p. 12, attached hereto as Exhibit I]. Intercity did not even get a permit from local authorities to install the alarm system. Conversely, Intercity is a company that provides fire, burglary, etc. detection services to its subscribers. The mere installation of various alarm equipment in the properties of its customers does not bring Intercity within the purview of the statute of repose.

In Columba v. Fulchini Plumbing, 58 Mass. App. Ct. 901, 788 N.E.2d 555 (2003), the defendant was hired to install a replacement boiler at the plaintiff's home. Seven years after the installation, the boiler caused a fire that resulted in substantial property damage. Id. at 901, 788 N.E.2d at 556. The trial court granted the installer's motion for summary judgment on statute of repose grounds. Id. On appeal, the appellate court reversed, holding that the mere installation of a boiler does not qualify for protection under § 2B. Id. at 902, 788 N.E.2d at 557. This conclusion was based on the fact that the installer "did no structural work, designed nothing, and did no customization work of any kind." Id. Furthermore, the court noted that "[t]he policy reasons for the protection afforded by the statute of repose do not encompass the straightforward installation of a replacement boiler." Id. The installer did not provide "the kind of individualized expertise performed by architects, design professionals, or contractors as contemplated by the statute." Id.

Here, no evidence exists that Intercity Alarms, Inc. provided such individualized expertise. Intercity merely installed and monitored a standard alarm system at the MacNeil residence. As such, Intercity's work did not involve the type of design, planning, construction, or general administration required by the statute of repose. Accordingly, Intercity is not entitled to the protections of § 2B.

### E.   At a minimum, § 2B does not apply to Defendant Intercity Alarms, Inc.'s subsequent modifications and upgrades to the subject alarm system.

Assuming, *arguendo*, the statute of repose does apply to Intercity's work on the alarm system in 1983, § 2B does not apply to the subsequent modifications and upgrades to the alarm system at the MacNeil residence. Upgrades have been deemed to be improvements to real property for purposes of § 2B. Agri-Mark v. Niro, Inc., 214 F.Supp.2d 33, 40 (D. Mass. 2002). In Agri-Mark, the court held that modifications to a pre-existing industrial milk evaporator was an improvement to real property. Id. It is undisputed that Intercity performed upgrades to the alarm system after 1983.

Even where § 2B may protect a defendant from its negligence for actions beyond the statutory period, the defendant will remain liable if he commits subsequent negligent acts that are within that period. See Parent v. Stone & Webster Engineering Corp., 408 Mass. 108; 556 N.E.2d 1009 (1990). In Parent, subsequent work by the defendant at the generating plant gave rise to a duty owed to the plaintiff that was well within the statute of repose period. Id. at 115-116, 556 N.E.2d at 1013. As such, the court concluded that the statute of repose applied to the defendant's tortious acts taking place in 1958, but not to subsequent negligent acts. Id.

Here, Defendant Intercity Alarms, Inc. performed subsequent modifications, upgrades, and installations to the alarm system at the MacNeil residence. From the limited documentation produced by Intercity, this included upgrading the backup wireless radio [11/7/1995, attached hereto as Exhibit E], installation of batteries [8/17/2000, attached hereto as Exhibit F],

11

installation of an internal siren [11/17/2000, attached hereto as Exhibit G], installation of a side door contact [11/17/2000, Exhibit G], installation of a back door contact [6/28/2001, attached hereto as Exhibit H], and the installation of a FBI control panel #XL-2 (unknown).

In the unlikely scenario where the subject alarm system were considered an improvement to realty **and** Defendant Intercity Alarms, Inc. is given the protections afforded to architects, engineers, and other design professionals for work performed in 1983, § 2B would not shield Intercity from liability for the upgrades, modifications, and/or subsequent installations of the alarm system. Accordingly, Plaintiff's claims for negligent installation and design should not be dismissed. Rather, Defendant's Motion for Partial Summary Judgment should be denied.

### 4.     Conclusion

For the forgoing reasons, Defendant Intercity Alarms' Motion for Partial Summary Judgment should be denied.

> GIARUSSO, NORTON, COOLEY
> & McGLONE, P.C.
>
> BY:    s/ Curtis A. Connors
> Roy P. Giarrusso, Esquire (BBO #549470)
> Curtis A. Connors, Esquire (BBO #630288)
> Giarrusso, Norton, Cooley,
>   & McGlone, P.C.
> Marina Bay
> 308 Victory Road
> Quincy, MA  02171
> Telephone:  (617) 770-2900

OF COUNSEL:
A. Richard Bailey, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103

(215) 665-2040

Phila1\2198542\1 133717.000